UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

ALBERT A. D'AGOSTINO,

                         Plaintiff,

           v.                                          1:09-CV-1347 (LEK/RFT)

THOMAS P. DINAPOLI, *Comptroller
of the State of New York*; KEVIN F.
MURRAY, *Deputy Comptroller of the
State of New York*; ROBERT COUGHLIN,
*Counsel to the New York State and Local
Employees' Retirement System*; LISA
BIERMAN, *General Counsel for the
Comptroller of the State of New York*,

                         Defendants.

_____

**MEMORANDUM-DECISION AND ORDER**

**I.      INTRODUCTION**

           Presently before the Court is Defendants' Motion (Dkt. No. 10) to dismiss Plaintiff's

Complaint (Dkt. No. 1) in its entirety or stay the action pending resolution of certain administrative

proceedings.  Plaintiff Albert A. D'Agostino, formerly an attorney for New York State public school

districts and municipal employers, has named in this action Thomas P. DiNapoli, Comptroller of the

State of New York; Kevin F. Murray, Deputy Comptroller of the State of New York; Robert

1

Coughlin, Counsel to the New York State and Local Employees' Retirement System; and Luke Bierman, General Counsel for the Comptroller of the State of New York.  Compl. at 3-4.  The sole claim at issue, brought under 42 U.S.C. § 1983 and seeking compensatory damages, alleges that Defendants deprived Plaintiff of his Fourteenth Amendment right to due process of law and caused him various injuries arising from the substantive deprivation of retirement benefits which followed the due process deprivation.


II.     BACKGROUND

Beginning in 1977, Plaintiff was appointed and paid an annual salary to act as school attorney for Valley Stream Free School District No. 30 in Hempstead, New York.  Compl. at 2. The District provided Plaintiff the opportunity to enroll in the New York State Employees' Retirement System ("ERS" or "System").  Id. at 3.  Thereafter, Plaintiff worked for assorted other New York municipal employers for which he was credited in the System.  On October 14, 2000, Plaintiff entered retirement and began to draw benefits from ERS in an annual amount of approximately $106,000.  Id.

Plaintiff's suit arises from a series of administrative actions taken by Defendants to determine the eligibility of Plaintiff for membership in ERS; these actions culminated in an April 23, 2008 letter to Plaintiff, suspending payment of his retirement benefits.  Compl. at 5. No pre-deprivation hearing was held in relation to this determination.  Id.  Plaintiff alleges that "[i]n suspending the Plaintiff's pension benefits, the Defendants individually, and/or in concert failed to provide the Plaintiff with adequate notice of the nature of and factual basis for the

2

actions being taken against him, and failed to provide a pre-deprivation hearing or any other Constitutionally sufficient Due Process of Law." Id. at 6. The letter came from Defendant Murray and is alleged to have been authored or sent with the knowledge and consent of the other named Defendants. Id. at 5. Subsequently, by a letter dated August 19, 2008, Plaintiff's suspension of benefits was confirmed, his membership in ERS was revoked, and a demand for repayment of $605,874.79 within 30 days was made, the amount of benefits Plaintiff has received during his years of inclusion within the System. Id. at 6.

In response to this determination, Plaintiff commenced a CPLR Article 78 proceeding in New York Supreme Court, Albany County, which resulted in a ruling substantially in Plaintiff's favor. See In the Matter of the Application of D'Agostino v. DiNapoli, Index No. 8134-08 (Sup. Ct. Albany Co. Aug. 20, 2009). In the Article 78 proceeding, most of Plaintiff's challenges were dismissed on Defendants' motion; Plaintiff's due process claim, however, was allowed to go forward, and the court ultimately held on August 20, 2009, that Defendants violated Plaintiff's "right to procedural due process by depriving him of continuing retirement benefits prior to granting him a hearing and by failing to provide adequate notice of the nature of and factual basis for the claims against him." Id., Compl. Ex. C at 6. Accordingly, the court vacated and annulled the determination, and ordered the Comptroller to: "pay accrued arrears in [Plaintiff's] pension within 30 days . . . ." Id. at 7. Thereafter, Plaintiff received the sum of his suspended benefits, and in a letter dated September 10, 2009, notice that monthly payments had resumed and indication that further review of his status within ERS would happen with "appropriate due process." Mot. to Dismiss, Murray Dec.,¶ 4, and Exh. A. Plaintiff, despite

3

prevailing in this manner, appealed the dismissal of a number of his arguments to New York

Supreme Court, Appellate Division.  Finding that Plaintiff was no longer aggrieved, this appeal

was dismissed on February 25, 2010.  In the Matter of the Application of D'Agostino, 70 A.D.

3d 1285, 894 N.Y.S. 2d 778 (3d Dep't Feb. 25, 2010)

After the trial court's August 20, 2009 ruling on the Article 78 action, Plaintiff was sent

a letter dated November 10, 2009, informing him that his membership in ERS had been subject

to review which had resulted in a finding of ineligibility.  Mot. to Dismiss, Murray Dec., ¶ 5 and

Exh. B.  The letter advised Plaintiff that he had been incorrectly designated as an employee for

purposes of ERS, rather than as an independent contractor, such that Plaintiff's enrollment in the

System was invalid.  The letter did not communicate that a final determination had been made,

but offered, instead: "If you have documentation or information that would support a finding

that you were an employee, please submit it to us for further consideration.  In order to be

considered before we issue a determination, such documentation must be submitted in writing

within 15 days . . . ."  Id.  The letter also included an analysis of Plaintiff's work history with

various school employers purporting to support the conclusion that Plaintiff's relationship to

those employers was that of an independent contractor.  Id.

Another letter was sent on November 17, 2009, stating that Plaintiff's request for an

RSSL § 74(d) hearing in relation to the earlier determination was deemed withdrawn on the

basis of ERS' withdraw of its earlier preliminary determination regarding Plaintiff's enrollment,

pursuant to the state court decision.  Mot. to Dismiss, Murray Dec., ¶ 6 and Exh. C.  It also

reminded Plaintiff of the new preliminary determination and noted the time for appeal after an

4

actual determination of his ERS status.  Id.  Thus, given this background, according to Defendants, Plaintiff has and will continue to receive retirement benefits until "(1) a decision to suspend or revoke his benefits is made and sustained in an RSSL § 74(d) hearing, or (2) a decision to suspend or revoke his benefits is made and Plaintiff fails to timely request an RSSL § 74(d) hearing."  Mot. to Dismiss, Memo. at 8-9.  On March 17, 2010, ERS confirmed its preliminary determination, concluding that Plaintiff had been an independent contractor and was ineligible for membership in the System.  Reply at 6.  The Court is not aware of the current status of any RSSL § 74(d) hearing on this matter and whether a final determination has been made; nor is there a record of whether state court review has been or will be sought following such a hearing pursuant to CPLR §§ 7803(4) and 7804(g).

The instant suit is predicated on, and seeks damages arising solely from, the initial due process violation occasioned in April 2008, which Plaintiff contested and prevailed on in state court pursuant to Article 78, and on the deprivation of benefits that followed the asserted the violation.  As stated above, the Hon. Gerald Connolly of the New York Supreme Court, Albany County found that Defendants' actions of suspending Plaintiff's retirement benefits prior to a hearing and failing to provide adequate notice of the basis for that suspension violated the constitutional guarantee of procedural due process.  In his suit, Plaintiff alleges that he has suffered, *inter alia*, economic harm, extreme emotional distress, pain and suffering derived from the reputational injury caused by Defendants.  Compl. at 8-9.  This asserted harm to personal and professional reputation comes from what Plaintiff alleges were actions taken by Defendants to publicize the suspension of Plaintiff's benefits through multiple media outlets and cast his

receiving of those benefits as an "egregious fraud." Id. at 8.  More broadly, Plaintiff contends

that the deprivation of his Fourteenth Amendment rights caused assorted compensable harms,

and that Plaintiff had to incur significant legal expenses to vindicate his constitutional rights. Id.

at 9.  On this basis, Plaintiff seeks damages for unspecified monetary and non-monetary losses,

as well as punitive damages and attorneys' fees.  Defendants moved the Court to dismiss or stay

Plaintiff's action on February 9, 2010, arguing, in the main, that his claim is unripe and without

merit.  See generally Mot. to Dismiss.  The Court now address that Motion.


III.    DISCUSSION

        Upon reviewing Defendants' Motion and Plaintiff's Response in opposition, the Court

observes that there has been some uncertainty as to the nature of Plaintiff's claim and the relief

sought in his Complaint.  The initial arguments presented by Defendants in their Motion to

dismiss speak to issues of Eleventh Amendment immunity for Defendants in their official

capacities and of standing to assert a claim for declaratory judgment in relation to the due

process challenge already adjudicated in state court.  Mot. to Dismiss, Memo. at 11-13.

Plaintiff's Response makes clear, however, that despite ambiguities in the Complaint which

indicated that a claim raising these issues was in fact made, Plaintiff does not seek to sue

Defendants in their official capacities or seek a declaratory judgment in any matter.  Response at

15-18.  Accordingly, to the extent that such claims were alleged, they are deemed abandoned.

        The primary basis on which Defendants move for dismissal is their contention that

Plaintiff's § 1983 claim lacks the requisite ripeness or maturity of facts for judicial resolution at

6

this time.  Defendants' argument rests on the doctrine of prudential ripeness.  Mot. to Dismiss,

Memo. at 15-20.  That is, while Plaintiff's claim satisfies the requirement of a "concrete dispute

affecting cognizable current concerns of the parties sufficient to satisfy standing and

constitutional ripeness,"  Ehrenfeld v. Mahfouz, 489 F.3d 542, 546 (2d. Cir. 2007), the Court is

urged to dismiss or stay Plaintiff's action because its present adjudication would, nevertheless,

be premature.[1]  "Prudential ripeness is, then, a tool that courts may use to enhance the accuracy

of their decisions and to avoid becoming embroiled in adjudications that may later turn out to be

unnecessary . . . ."  Simmonds v. INS, 326 F.3d 351, 357 (2d Cir. 2003).  Both constitutional

and prudential ripeness are addressed to this concern of maturity but are not coextensive; the

former "has as its source the Case or Controversy Clause of Article III of the Constitution, and

hence goes, in a fundamental way, to the existence of jurisdiction[, while . . . prudential

ripeness] is a more flexible doctrine of judicial prudence, and constitutes an important exception

to the usual rule that where jurisdiction exists a federal court must exercise it."  Id.  By

"evaluat[ing] both the fitness of the issues for judicial decision and the hardship to the parties of

withholding court consideration," Abbott Labs. v. Gardner, 387 U.S. 136, 148 (1967), overruled

---

[1]A central question raised by Defendants' Motion is whether Plaintiff has indeed, beyond the due process violation and its proximate consequences, experienced an injury compensable under § 1983, as Plaintiff's Complaint alleges by way of naming harms alleged to have stemmed from reputational injury caused by publicity of the asserted unjustified deprivation of benefits. It is unknown, however, whether the deprivation was actually unjustified.  Nevertheless,"*absolute* certainty of injury is not required for a case to be constitutionally ripe," Simmonds v. INS, 326 F.3d 351, 358 (2d Cir. 2003); the elements of a live case are present, and, if the deprivation of benefits was in fact unjustified, Plaintiff's injuries would be redressed by the relief requested.  See Duke Power Co. v. Carolina Environmental Study Group, 438 U.S. 59, 81 (1978).

on other grounds by Califano v. Sanders, 430 U.S. 99, 105 (1977), a court may determine on

prudential ripeness grounds that a "case will be *better* decided later and that the parties will not

have constitutional rights undermined by the delay." Simmonds, 326 F.3d at 357 (emphasis in

original).

A court's consideration of this manner of ripeness is governed by a two-step inquiry.

See N.Y. Civil Liberties Union v. Grandeau, 528 F.3d 122, 131 (2d Cir. 2008). "The fitness

analysis is concerned with whether the issues sought to be adjudicated are contingent on future

events or may never occur." Simmonds, 326 F.3d at 359 (quotations and citation omitted). In

assessing the possible hardship to the parties resulting from withholding judicial resolution," the

court considers "whether the challenged action creates a direct and immediate dilemma for the

parties . . ." outside the "mere possibility of future injury" without the prospect of causing

"present detriment." Id. at 360 (quotation and citation omitted).

Defendants argue that essential facts are undeveloped at this stage in the parties'

litigation, namely that it has not yet been determined whether the Plaintiff properly belongs

within ERS or should be excluded. Thus, they contend: "the fact that the newly commenced

administrative review may be 'separate and distinct' from the earlier administrative process does

not alter the reality that, until the conclusion of (1) the new review, (2) the subsequent

administrative hearing that Plaintiff has a right to demand pursuant to Retirement and Social

Security Law ("RSSL") § 74(d), and (3) any subsequent CPLR Article 78 review of the final

determination ultimately rendered after an RSSL § 74(d) hearing, this Court will be unable to

assess whether Plaintiff has suffered any compensable injury as a result of the purported

violation of his due process rights."  Reply at 5.  Regardless of whether the Plaintiff's claim may

be meritorious in whole or in part, Defendants argue that the § 1983 claim is not fit for review

because the Court cannot effectively address the breadth of that claim, particularly in relation to

identifying injuries and ascertaining damages, without a final determination of Plaintiff's ERS

status.  As to the hardship inquiry for considering ripeness, Defendants state that Plaintiff's

benefit payments have been restored, including those withheld following their 2008 suspension,

and that no direct economic injury would be inflicted by delay in the litigation.  Mot. to Dismiss,

Memo. at 19.  Further, they note that no hardship is caused by such delay where a plaintiff may

assert his claims in the future.  Id.

Plaintiff seeks to obtain damages now, prior to and separate from any resolution of the

ongoing administrative process concerning his membership in ERS.  He argues that the "new

proceeding is just that, one which has nothing to do with the justiciability of claims arising from

a separate, distinct and completed administrative action."  Response at 11.  Plaintiff insists that

because the "claim has given rise to injuries which are distinct from the loss of pension benefits,

including damage to professional and personal reputation, physical injury from the emotional

distress, and the injury caused by the deprivation of constitutional rights[,] . . ." the damages

sought in the present action "are unaffected and will not be remedied by any subsequent

proceeding, be it administrative or judicial."  Id.  According to Plaintiff, this asserted division

between the completed due process violation and the later round of process concerning the same

benefits question, instituted by Defendants after losing at Plaintiff's Article 78 hearing, makes

his § 1983 claim for the violation fit for judicial resolution and, hence, prudentially ripe.  With

respect to the hardship element, Plaintiff contends that delaying his "access to this Court to receive justice and compensation for his injuries would cause him substantial harm by preventing him from holding Defendants responsible for their flagrant and conscious disregard of fundamental Constitutional privileges." Id. at 24-25.

Upon application of the two-step inquiry, the Court finds that Plaintiff's claim involves issues which render it unfit for present judicial resolution; and the Court finds that delaying adjudication will not impose a cognizable hardship upon Plaintiff.  Accordingly, for reasons of prudential ripeness, the Court will dismiss Plaintiff's claim in part (as this action is composed of two different but related claims) pending a final administrative determination of Plaintiff's ERS status and, potentially, state judicial proceedings, as will be detailed below.

In Carey v. Piphus, 435 U.S. 247, 266 (1978), the Supreme Court explained that "the law recognizes the importance to organized society that [due process] rights be scrupulously observed . . ." and makes violations thereof "actionable for nominal damages without proof of actual injury."  The Court contrasted that feature with the principle that "substantial damages should be awarded only to compensate actual injury or, in the case of exemplary or punitive damages, to deter or punish malicious deprivations of rights."  Id.  In Memphis Community School Dist. v. Stachura, 477 U.S. 299, 308 (1986), the Court restated this holding as the rule that "*no* compensatory damages could be awarded for violation of that right absent proof of actual injury[,] . . ." such that "the abstract value of a constitutional right may not form the basis for § 1983 damages."  Consequently, in the instant case, the procedural due process violation plead by Plaintiff would indeed entitle him to an award of $1 in nominal damages.  See, e.g.,

10

<u>Valtchev v. City of New York</u>, No. 06-CV-7157, 2009 U.S. Dist. LEXIS 79815 at *39

(S.D.N.Y. Aug. 31, 2009).  In other words, the aspect of Plaintiff's claim going merely to the

existence of a violation is certainly ripe for adjudication.

   Plaintiff, however, seeks assorted damages for injuries alleged to have been caused by

public dissemination of information, allegedly false or misleading, concerning Plaintiff's

suspension from ERS.  For example, Plaintiff alleges: "The conduct of the Defendants in

disregarding existing legal precedent, and the prior multiple validations of the Plaintiff's right to

participate in the ERS and receive retirement benefits, and issuing press releases to widely

circulated news media unjustly subjecting the Plaintiff to public scorn and opprobrium,

irreparably harmed the Plaintiff's personal and professional reputation in the community,

causing him to sustain economic harm, extreme emotional distress, pain, and suffering."

Compl. at 8.  Beyond the asserted procedural due process violation, this injury implicates the

merits of Plaintiff's status in the System, and it is here that essential facts are undeveloped.  To a

great extent, Plaintiff's claim centers on general allegations of personal and professional

emotional, physical and economic harm caused by the reputational injury of Defendants' alleged

publication of his improper receiving of benefits and suspension from the System.  Yet the

Court has no way to know, at this juncture, whether Plaintiff is properly a member of ERS, or

whether the deprivation of benefits was justified on its merits, even if the process employed was

constitutionally faulty.  While Plaintiff's benefits have been restored, that is the subject of

ongoing proceedings.  <u>Carey</u> discussed the situation "where a deprivation is justified but

procedures are deficient, whatever distress a person feels may be attributable to the justified

deprivation rather than to deficiencies in procedure." Carey, 435 U.S. at 263-265.  A plaintiff

must prove that the "denial of due process itself" caused the asserted injury, as an "injury caused

by a justified deprivation, including distress, is not properly compensable." Id.  This last

proposition is key.  Plaintiff's claim does not merely exhibit the ambiguity of causation

addressed by Carey, but actually pleads harms that rest upon the Defendants' 2008 actions being

an *unjustified* deprivation of retirement benefits.  If the deprivation was instead justified,

regardless of the deficient process utilized, the range of damages sought which stem from the

deprivation, including reputational harm, would be foreclosed in Plaintiff's § 1983 action.

It is precisely the validity of the underlying deprivation of ERS benefits which is

necessary for Plaintiff's claim to proceed, and which current administrative and, potentially,

state court actions will resolve.  If it is ultimately determined that Plaintiff should remain a

member of ERS, such that the deprivation was improper on the merits, then Plaintiff's § 1983

claim may seek damages for personal and professional harms which he asserts have been caused

by the reputational harm associated with publicity of the deprivation.  If, conversely, it is found

that Plaintiff does not belong in the System, such that the 2008 deprivation was justified, his

claim is limited to nominal damages and some measure of attorneys' fees.[2]  The foreseeable

resolution of the merits of Plaintiff's status in ERS, and whether the substantive deprivation was

justified, strongly indicates why Plaintiff's claim is prudentially unripe.  The claim based on the

substantive deprivation can only go forward following a final determination or decision that

---

[2]Of the damages claimed by Plaintiff in his Complaint, attorneys' fees is type that appears
directly linked with simply the due process violation.

Plaintiff properly belongs with ERS.  For such an outcome to obtain, there must be a reversal of the March 17, 2010 determination that Plaintiff is not a member of the System, apparently through a RSSL § 74(d) hearing or, thereafter, through court review, as provided for under state law.  Accordingly, the appropriate action is for dismissal without prejudice of Plaintiff's claim predicated on the substantive deprivation.

The hardship step of the Court's inquiry does not reveal any reason which counsels against dismissing the claim on ripeness grounds.  No "direct and immediate dilemma" for the Plaintiff would be occasioned by delaying adjudication.  See Simmonds, 326 F.3d at 359.  Indeed, the only consequence of delay, were Plaintiff's claim to ultimately prevail, is simply that compensatory damages would be awarded later.  As Plaintiff's briefing states, the purported harm  is that it would "prevent[] him from holding Defendants responsible for their flagrant and conscious disregard of fundamental Constitutional privileges[,] . . ." meaning, in other words, that the delay, in and of itself, is the harm.  Lastly, given the essential undeveloped facts discussed above, it is improbable that Plaintiff's claim could proceed on the available record, which indicates that delay from dismissal may be an inevitability.  Finding that no hardship would be imposed and in view of the compelling reasons why Plaintiff's claim is not fit for review at this time, the Court dismisses the claim predicated on the substantive deprivation of benefits.

As the Court has adverted to, however, the single claim titled in Plaintiff's Complaint is actually composed of two claims: one for the procedural due process violation and any harms allegedly stemming therefrom, and one for the harms asserted to have arisen from the allegedly

unjustified deprivation of retirement benefits.  It is only the latter claim which this Court dismisses for lack of ripeness.  The former due process claim shall remain, as Plaintiff properly alleged the requisite elements ("(1) the conduct complained of was committed by a person acting under color of state law, and (2) this conduct deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States") for a § 1983 claim which, at a minimum, may result in nominal damages.  Greenwich Citizens Comm. v. Counties of Warren and Washington Indus. Dev. Agency, 77 F.3d 26, 29-30 (2d Cir. 1996).  The failure to "plead . . . a compensable actual injury in a § 1983 constitutional tort claim [] only precludes the recovery of compensatory damages, but does not lead to the dismissal of the underlying claim. Nominal damages remain available and the action is entitled to proceed."  Dawes v. Walker, 239 F.3d 489, 496 (2d Cir. 2001) (Walker, *J.*, writing separately).  Upon establishing a constitutional violation committed by defendants but failing to show injury deserving compensatory damages, a § 1983 plaintiff is "entitled to an award of at least nominal damages as a matter of law." Robinson v. Cattaraugus County, 147 F.3d 153, 162 (2d Cir. 1998).   Thus, the Court's instant Memorandum-Decision and Order shall result in the survival of Plaintiff's § 1983 action to extent that it alleges a claim for the procedural due process violation noted in state court by In the Matter of the Application of D'Agostino v. DiNapoli, Index No. 8134-08 (Sup. Ct. Albany Co.); such a claim is for damages, nominal or substantial, for harms cased by the procedural violation. Conversely, the portion of Plaintiff's Complaint that seeks compensatory damages for harms which rest, in part, upon the deprivation of benefits being unjustified is dismissed without prejudice as unripe.  The Court will, of course, entertain a Motion to amend the Complaint at an

14

appropriate time, were the merits of Plaintiff's ERS case resolved in a way which would render

such a Motion relevant.


**IV.     CONCLUSION**

For the foregoing reasons, it is:

ORDERED, that Plaintiff's § 1983 claim is **DISMISSED, in part and without**

**prejudice**, consistent with this Memorandum-Decision and Order; and it is further

ORDERED, that Defendant's Motion to Dismiss [10] is **GRANTED in part and**

**DENIED in part**, consistent with the Court's differentiation between Plaintiff's unripe § 1983

claim resting on an unjustified deprivation of benefits and his ripe § 1983 procedural due

process claim; and it is further

ORDERED, that the Clerk serve a copy of this Order on the parties.

**IT IS SO ORDERED.**


DATED:        July 20, 2010
              Albany, New York

Lawrence E. Kahn
U.S. District Judge